IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs at Knoxville October 15, 2013

## STATE OF TENNESSEE v. PATRICK SCOTT RILEY

**Appeal from the Criminal Court for Davidson County**
**No. 2010-A-666      Mark J. Fishburn, Judge**

---

**No. M2013-00776-CCA-R3-CD - Filed December 23, 2013**

---

The Defendant-Appellant, Patrick Scott Riley, appeals from the Davidson County Criminal Court's order revoking his community corrections sentence. He previously entered a guilty plea to burglary and received an eight-year suspended sentence. On appeal, Riley argues that the trial court unreasonably conditioned his community corrections sentence on the requirement that he "get off any and all opiates or other medications that have any addictive qualities" within sixty days of the September 5, 2012 sentencing hearing. Upon review, we conclude that the issue challenging the conditions of his community corrections sentence is waived by Riley's failure to timely appeal the trial court's initial order. We further conclude that the trial court did not abuse its discretion by revoking Riley's community corrections sentence and ordering his original eight-year sentence to be served in confinement. Accordingly, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which D. KELLY THOMAS, JR. and JEFFREY S. BIVINS, JJ., joined.

Samuel A. Wooden, Nashville, Tennessee, for the Defendant-Appellant, Patrick Scott Riley.

Robert E. Cooper, Jr., Attorney General and Reporter; Michelle L. Consiglio-Young, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Sarah Davis, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

On March 26, 2010, the Davidson County Grand Jury returned a two-count indictment charging the Defendant-Appellant, Patrick Scott Riley, with one count of burglary and one count of theft of property valued at $500 or less. On May 10, 2012, Riley pled guilty to one

count of burglary in exchange for the dismissal of the theft count and an eight-year sentence.[1] The manner of service of the sentence was to be determined by the trial court.

Evidence presented at the July 25, 2012 and September 5, 2012 sentencing hearings revealed that Riley had a lengthy criminal record due to his alcohol use and drug addiction. By his own admission, most, if not all, of his criminal charges were motivated by an attempt "to get self-medicated[.]" Riley reported having various health problems and that he had been struggling with cocaine and Dilaudid addiction over the course of his life. Despite his addiction to opiate medication, he was prescribed hydromorphone for his chronic pain. In July or August of 2011, while on bond for the instant burglary offense, he was arrested for stealing bacon from a grocer to sell for drug money. Riley acknowledged that his addiction was part of the reason why he kept returning to jail. Previously in 2001, Riley underwent intensive drug treatment through the Davidson County Drug Court. He absconded and did not complete the program. Riley has also had experiences in various treatment facilities such as Buffalo Valley and Cumberland Heights. The trial court expressed concern that the very drug that Riley struggled with was the same medication that he continued to use.

At the conclusion of the September 5, 2012 sentencing hearing, the trial court sentenced Riley to eight years in the Department of Correction with a release eligibility of forty-five percent. The court suspended the sentence and ordered Riley to serve the eight years on community corrections. Specifically, he was placed under the supervision of the Dual Disorders Services (DDS) program in Davidson County. The conditions of Riley's community corrections sentence included that he report to all required appointments, refrain from consuming alcohol, undergo weekly alcohol and drug screens, remain active with Centerstone treatment facility, and that he would have sixty days "to get off any and all opiates or other medications that have any addictive qualities[.]" The trial court advised Riley that a violation of the conditions of his sentence would result in revocation of community corrections and incarceration for the balance of the sentence.

On November 30, 2012, Riley's community corrections officer filed a Violation of Community Corrections Program Affidavit, alleging that Riley violated the conditions of his

---

[1] We note that Riley did not include the transcript from his May 10, 2012 guilty plea hearing in the record on appeal. We have carefully reviewed the appellate record and conclude that the indictment, the judgment and amended judgment, the transcript of the July 25, 2012 and September 5, 2012 sentencing hearings, the November 30, 2012 community corrections violation warrant, the January 10, 2013 amended violation warrant, and the revocation hearing transcript are sufficient for a meaningful review of the issue on appeal. See State v. Caudle, 388 S.W.3d 273, 279 (Tenn. 2012) (concluding that "[i]f . . . the record is adequate for a meaningful review, the appellate court may review the merits of the sentencing decision with a presumption that the missing transcript would support the ruling of the trial court.").

sentence by failing to appear for his scheduled appointment on November 26, 2012. The trial court issued a warrant for Riley's arrest.

On January 10, 2013, Riley's community corrections officer filed an Amended Violation of Community Corrections Program Affidavit, alleging that Riley, after making bond on December 26, 2012, failed to appear for his scheduled appointments on December 27, 2012 and on January 3, 2012. That same day, the trial court issued another warrant for Riley's arrest.

At the February 28, 2013 revocation hearing, Samantha Thompson of Transitions Housing Agency testified on behalf of the defense. Thompson stated that Riley had called her during the first week of February to inquire about transitional housing. She said that Transitions Housing is a structured transitional living facility for individuals recovering from drug and alcohol abuse and that residents are subject to curfews and random drug screens. According to Thompson, accommodations in the facility would be available that same day for Riley at a weekly rent of $130. She further stated that Riley qualified for the facility's ninety-day program. On cross-examination, Thompson said she had not personally met with Riley and that she did not have information about his particular addiction or situation.

Brandi Jimerson, Riley's community corrections officer, testified that Riley was placed on the Community Corrections DDS program and that one of the conditions was that he had sixty days to be taken off of Dilaudid. Jimerson said that Dr. Mayer, the DDS staff psychiatrist, started treating Riley with Suboxone. When Jimerson sought to screen Riley for drug use, he admitted to drinking. Jimerson stated that Dr. Mayer did not want to treat Riley with Suboxone if he had been drinking. She said that Riley was assessed, and accepted, for treatment with Samaritan Inpatient in November 2012. Riley was told to report back to the community corrections DDS office on November 26, 2012 since it would be about two and a half weeks until a bed became available at Samaritan Inpatient. Riley did not report as scheduled so Jimerson called his home and left a message on November 28. Jimerson said she also contacted Riley's attorney to see if Riley went into treatment somewhere without her knowledge. On November 30, 2012, the trial court signed a warrant because Riley was considered to be an absconder.

Jimerson testified that Riley entered into Buffalo Valley for treatment on December 4, 2012. He was discharged on December 21 and was told to report to the community corrections DDS office on December 27. However, Riley did not appear for his scheduled appointment. Jimerson said Riley had called her on December 24 and left a message that he had been released. He also told her that he had not turned himself in for the community corrections violation and that he was looking for a half-way house. Jimerson tried to call Riley back on December 26 but could not reach him. She said Riley did turn himself in on

the community corrections violation and made bond.  He called her and said he was going to the hospital and that he would bring the paperwork to her, but he did not ever call Jimerson back.  She attempted to contact Riley on January 2, 2013, and reached his mother.

Jimerson explained to Riley's mother that Riley had not reported to the community corrections office since making bond and that he should report the following day at any time.  According to Jimerson, Riley never reported on January 3.  Instead, he called her after hours and left a message stating he did not report because he was being admitted to the hospital and that he would call Jimerson back.  She said she never heard from Riley again.  The trial court then signed an amended warrant on January 10, 2013, for Riley's failure to report to the community corrections office as required.  The warrant was then served on Riley some time in early February 2013.  Jimerson then identified Riley in the courtroom.

On cross-examination, Jimerson disagreed that absconding is a technical violation of Riley's community corrections sentence.  She said that every time she called Riley, she could not reach him and that he would call her after hours and leave voice messages.  Jimerson did receive faxes from Buffalo Valley verifying that Riley was there during the time in question.  However, she did not have any records that Riley had been hospitalized in early January 2013.  She reported having seen Riley approximately eight to ten times while he was under her supervision.  She said he was screened for drug use on four occasions and tested positive for Dilaudid twice.  Jimerson did not recall the circumstances of Riley's self-reported drinking or exactly how much alcohol he said he had consumed.  She testified that Riley was always very cooperative and did not have any behavioral problems.  Apart from his failure to report, Jimerson never had any issues with Riley.  She said he had willingly appeared every week for two days of treatment at Centerstone and two days with the community corrections DDS program.

Patrick Scott Riley testified that he has frequently experienced physical problems and that pain medication has always been a part of his life.  After being prescribed pain medication on various occasions, Riley developed a dependency on them.  Following his sentencing to community corrections, he had tried to curb his addiction, but the physical withdrawals from the opiates were extremely difficult.  He said when the first violation warrant was issued in late November 2012, he had been attempting to secure a placement with Samaritan Center but was told that a bed would not be available for nearly three weeks.  According to Riley, his addiction continued to progress such that he would panic because he was under court order to get off the opiates.  He attempted to get into various treatment centers but could not afford the required payment.  He said he relapsed in early December 2012 and entered into Buffalo Valley for detoxification.

During the treatment process, Riley suffered acute withdrawals on December 16, 2012, such that he was vomiting about every twenty minutes throughout the day. He was taken to the emergency room and given injections of Phenergan and Zofran, but he continued vomiting. Riley said the hospital was aware that he was undergoing treatment for opiate dependency. The medical records were admitted into evidence and reflected that Riley received a morphine injection at the hospital on December 16, 2012. The morphine treatment stopped the withdrawals, and Riley was released back to Buffalo Valley at around 11:45 p.m. that evening. He acknowledged that after his release from Buffalo Valley on December 21, he did not visit or contact Ms. Jimerson. He said he was unaware that he was supposed to immediately check in with his community corrections officer and that there had been communication problems at Buffalo Valley. After his discharge, Riley arranged to make bond, "and then, of course, [he] went back to using drugs." He testified that he took the remaining medication from his hydromorphone prescription.

Riley said he was brought into custody on February 3, 2013, when he was a passenger in a car that was pulled over. Since he had been in custody for the past three weeks, Riley said he had been attempting to find living arrangements and had called various half-way houses. He had also been looking for employment while in custody. He was an electrician by trade and had suitable employment if he were to be released. He said he had also been attending substance abuse meetings and church services while in custody. Although his recovery process had not been perfect, Riley said he was committed to making progress. He admitted that he had relapsed shortly after his release from Buffalo Valley in late December 2012.

On cross-examination, Riley acknowledged that he was no longer using opiates because he was in custody. He denied absconding from his arrangements for inpatient treatment at Samaritan House. He conceded that he was scheduled to report to Samaritan House on November 26, 2012, and that he entered into treatment at Buffalo Valley on December 4, 2012. He did not have an explanation for the trial court as to why he was not reporting to, or meeting with, his community corrections officer as required.

Following the hearing, the trial court found that Riley had violated the terms and conditions of his community corrections. The trial court noted that Riley was given multiple opportunities to rehabilitate himself in the community corrections program and to work closely with Jimerson, who had repeatedly reached out to him. The court stated that Riley's bond on his initial violation warrant had been significantly reduced so that he could continue working with his community corrections officer after his release from Buffalo Valley. Even after being discharged from Buffalo Valley on December 21, 2012, Jimerson had not issued an amended violation warrant until January 10, 2013. The court noted that the issue was not that Riley had experienced withdrawals or that he could secure employment if released, but

rather, "[t]he issue is his refusal . . . to comply with the requirements of Community Corrections and meeting with Ms. Jimerson." After considering the evidence, the trial court sustained the violation warrant, revoked Riley's community corrections, and imposed his original sentence of eight-years' incarceration, with credit for time served.

On March 19, 2013, Riley filed a timely notice of appeal as to the trial court's February 28, 2013 judgment.

## ANALYSIS

On appeal, Riley argues that the trial court "unreasonably conditioned [his] community corrections on the requirement that he, within sixty days, stop taking his prescription medication." He contends that this condition was beyond the scope of the trial court's discretion and is a violation of constitutional protections against the infliction of cruel and unusual punishment. Therefore, he maintains that "any violation premised on a violation of this condition is insufficient to revoke community corrections." In response, the State argues that Riley, in failing to timely appeal his community corrections sentence, has waived any consideration of the imposed conditions. The State also maintains that the trial court properly exercised its discretion in revoking Riley's community corrections and in reinstating the original sentence of incarceration. We agree with the State.

As an initial matter, we note that Riley has filed a timely notice of appeal as to the trial court's February 28, 2013 order which revoked his community corrections sentence and reinstated the sentence of eight-years' imprisonment. However, Riley did not appeal the trial court's judgment entered on September 5, 2012, ordering him to serve his eight-year sentence on community corrections, subject to certain conditions. The record reflects that at the conclusion of the September 5, 2012 sentencing hearing, the trial court advised Riley that a violation of the conditions of his sentence would result in revocation of community corrections and incarceration for the remainder of the sentence. After the trial court imposed the conditions of the community corrections, Riley could have appealed within thirty days if he considered any of the imposed conditions to be unreasonable. See State v. Pendergrass, 937 S.W.2d 834, 837 (Tenn. 1996) ("As a general rule, a trial court's judgment becomes final thirty days after its entry unless a timely notice of appeal or a specified post-trial motion is filed"); see also T.C.A. § 40-35-401(a) (2010) ("The defendant in a criminal case may appeal from the length, range or the manner of service of the sentence imposed by the sentencing court. . . . An appeal pursuant to this section shall be taken within the same time and in the same manner as other appeals in criminal cases.").

Rule 4(a) of the Tennessee Rules of Appellate Procedure provides that "the notice of appeal required by Rule 3 shall be filed with and received by the clerk of the trial court

within 30 days after the date of entry of the judgment appealed from . . . ." However, this rule also states that "in all criminal cases the 'notice of appeal' document is not jurisdictional and the filing of such document may be waived in the interest of justice." Tenn. R. App. P. 4(a). This court, in deciding whether to grant a waiver regarding an untimely notice of appeal, "shall consider the nature of the issues for review, the reasons for the delay in seeking relief, and other relevant factors presented in each case." Michelle Pierre Hill v. State, No. 01C01-9506-CC-00175, 1996 WL 63950, at *1 (Tenn. Crim. App., at Nashville, Feb. 13, 1996), perm. app. denied (Tenn. May 28, 1996). "Waiver is not automatic and should only occur when 'the interest of justice' mandates waiver. If this court were to summarily grant a waiver whenever confronted with untimely notices, the thirty-day requirement of Tennessee Rule of Appellate Procedure 4(a) would be rendered a legal fiction." State v. Rockwell, 280 S.W.3d 212, 214 (Tenn. Crim. App. 2007) (citing Michelle Pierre Hill, 1996 WL 63950, at *1). Here, Riley filed a notice of appeal on March 19, 2013, after the trial court revoked his community corrections sentence. Insofar as he seeks to challenge the conditions imposed after the September 5, 2012 sentencing hearing, Riley's notice of appeal was untimely by five and a half months. Moreover, the record reflects that Riley's community corrections officer filed a violation affidavit and an amended violation affidavit based on Riley's repeated failure to report for scheduled appointments, and the trial court sustained the violation warrant after an evidentiary hearing. Thus, the issue was not that Riley had failed to fulfill the sixty-day opiate detoxification requirement, but that he had failed to meet with Jimerson on three occasions. Given that the notice of appeal as to the imposed conditions was untimely by nearly half a year, and that the conditions were challenged only after the revocation of the alternative sentence, we conclude that the "interest of justice" would not be served by granting a waiver of the timely appeal as to the September 5, 2012 judgment. See Tenn. R. App. P. 4(a); see also State v. William A. Marshall, No. M2001-02954-CCA-R3CD, 2002 WL 31370461, at *6 (Tenn. Crim. App. Oct. 14, 2002) ("We doubt whether the defendant may wait until a revocation has been declared before he attacks the reasonableness of the probation condition, at least when the circumstances of the performance of the condition are known or foreseeable at the time of imposition."). Accordingly, the issue challenging the conditions of Riley's community corrections sentence is waived by his failure to timely appeal that order.

Riley did, however, file a timely notice of appeal as to the February 28, 2013 judgment of the trial court revoking his alternative sentence. On appeal, he requests that this court "reinstate his sentence to community corrections." After a thorough review, we conclude that the trial court did not abuse its discretion in revoking Riley's community corrections sentence and ordering him to serve his original eight-year sentence in confinement.

The purpose of the Community Corrections Act of 1985 was to "[e]stablish a policy within the state to punish selected, nonviolent felony offenders in front-end community based alternatives to incarceration, thereby reserving secure confinement facilities for violent felony offenders[.]" T.C.A. § 40-36-103(1) (2010). The Act provides that:

> The court shall also possess the power to revoke the sentence imposed at any time due to the conduct of the defendant or the termination or modification of the program to which the defendant has been sentenced, and the court may resentence the defendant to any appropriate sentencing alternative, including incarceration, for any period of time up to the maximum sentence provided for the offense committed, less any time actually served in any community-based alternative to incarceration.

Id. § 40-36-106(e)(4) (2010). The principles in reviewing whether the revocation of community corrections was proper are the same as those applied in probation revocation. See State v. Harkins, 811 S.W.2d 79, 83 (Tenn. 1991). A trial court may revoke a community corrections sentence if it finds by a preponderance of the evidence that the defendant has violated the conditions of his or her alternative sentence. See id. at 82; see also T.C.A. § 40-35-311(e) (2012). This court will not disturb the judgment of the trial court in this regard absent an abuse of discretion. See Harkins, 811 S.W.2d at 82 (citing State v. Williamson, 619 S.W.2d 145, 146 (Tenn. Crim. App. 1981)). To establish an abuse of discretion, the defendant must show "that the record contains no substantial evidence to support the conclusion of the trial judge that a violation of the conditions of probation has occurred." Harkins, 811 S.W.2d at 82 (citing State v. Grear, 568 S.W.2d 285, 286 (Tenn. 1978); State v. Delp, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980)). The State need not prove the violation beyond a reasonable doubt; rather, the evidence "is sufficient if it allows the trial judge to make a conscientious and intelligent judgment." Harkins, 811 S.W.2d at 82 (citing State v. Milton, 673 S.W.2d 555, 557 (Tenn.Cr.App.1984)). Once the trial court decides to revoke a defendant's community corrections sentence, it may "[c]ause the defendant to commence the execution of the judgment as originally entered, or otherwise, in accordance with § 40-35-310[.]" T.C.A. § 40-35-311(e).

The record in this case contains sufficient evidence that Riley violated the terms of his community corrections. At the revocation hearing, Riley conceded that he was not contacting or meeting with his community corrections officer as required. He admitted to using opiates on at least two occasions. When questioned by the trial court as to why he was not reporting to Jimerson, Riley did not have an explanation. In his brief, Riley maintains that he "relapsed, and wound up in treatment causing him to miss his Community Corrections appointments." However, the evidence in the record does not contain any overlap between when Riley was receiving treatment and when he was required to report to the community

corrections office.  Although Jimerson repeatedly reached out to him, Riley did not report to his scheduled appointments and failed to produce hospital records to support his claims. Based on the record, it was within the trial court's discretion to revoke Riley's community corrections sentence and to order him to serve his original sentence in confinement.  Riley has failed to establish the absence of any substantial evidence to support the decision of the trial court, and he is not entitled to relief.  See Harkins, 811 S.W.2d at 82.

## CONCLUSION

We conclude that the trial court did not abuse its discretion in revoking Riley's community corrections sentence and ordering him to serve his original sentence in confinement.  The judgment of the Davidson County Criminal Court is affirmed.

_____
CAMILLE R. McMULLEN, JUDGE